IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIEGEL JACOB,** : | | CIVIL ACTION |
| *Plaintiff* : | | |
| : | | |
| v. : | | NO. 24-CV-6773 |
| : | | |
| **CONNOR GAJEWSKI,** : | | |
| *Defendant* : | | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                    FEBRUARY 2, 2026

      Plaintiff Kiegel Jacob, an inmate currently incarcerated at SCI Mercer, filed this *pro se* civil rights action against Defendant Connor Gajewski[1] for excessive force and cruel and unusual punishment. The events occurred while Jacob was incarcerated at SCI Phoenix, where Gajewski is employed as a Correctional Officer. Gajewski filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a motion for summary judgment.[2] (ECF No. 29). Jacob responded in opposition thereto (ECF No. 35). Gajewski was given until

---

[1] In his Complaint, Jacob initially identified Gajewski as a "John Doe" Defendant. Jacob subsequently filed a Motion to Amend the Complaint identifying the "John Doe" in his Complaint as Defendant "CO1 Galewski." (ECF No. 7.) The Court entered an Order on March 17, 2025, construing Jacob's Motion as a Motion to Substitute Defendant John Doe for "CO1 Gajewski." (ECF No. 11.) In his Motion to Dismiss, "CO1 Galewski" clarified that his name is Connor Gajewski. (*See* ECF No. 29 at 1.) The Court will refer to Gajewski by the correct name as clarified in his Motion and direct the Clerk of Court to update the docket to accurately reflect his name.

[2] As explained in further detail, given that the exhaustion issue turns on the indisputably authentic documents related to Jacob's grievances, the Court may consider these without converting it to a motion for summary judgment. *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018). The Court notes that it did not consider the declaration attached as an exhibit attached to the Gajewski's Motion. (ECF No. 29-1.) This ruling does not affect Gajewski's ability to file a motion for summary judgment at the appropriate to time, which is not yet determined.

November 8, 2025, to file a reply brief if he wished to do so, but did not file one. (ECF No. 32.) For the reasons set forth, Gajewski's motion to dismiss (ECF No. 29) is denied.

I.  **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[3]

Jacob, a convicted and sentenced state prisoner, was an inmate at SCI Phoenix at all times relevant to his alleged claims. (Compl. at 4.) In his complaint, he alleges that on February 11, 2024, dinner was being served in the Restricted Housing Unit ("RHU") by a Sergeant and three "other officers." (*Id*. at 5.) Jacob's cell wicket was open for two to three minutes while he waited for his meal. (*Id*.) Jacob bent down to speak with the Sergeant and claims that Gajewski, who was serving the meal, pulled out his Oleoresin Capsicum ("O.C.") spray and sprayed Jacob in the face "without a[n] order given." (*Id*.) After the other Correctional Officers saw what happened, Jacob asserts they quickly secured his wicket. (*Id*.) He was taken to the medical unit approximately five minutes later. (*Id*.)

Jacob alleges he filed a grievance related to this incident that was denied after an initial review. (*Id*. at 7.) He claims he "completed all that was required to the highest level of the grievance process [and they] lied and said [he] didn't provide[] them with the correct paperwork." (*Id*.) He also claims he has the "receipts that [he] sent them everything that was needed for [his] Final Appeal, so now [they] told [him] that [his] grievance has been dismissed at [his] final appeal level." (*Id*.) Jacob attached both the initial review response from the grievance officer denying his grievance, and the appeal response from SCI Phoenix's Facility Manager, which reflects the

---

[3] The factual allegations set forth in this Memorandum are derived from Jacob's Complaint ("Compl."), which was filed on the Court's form available to unrepresented litigants. (ECF No. 2). He also attached exhibits related to his grievance to his Complaint. (ECF No. 2-1.) The Court considers the entirety of these submissions to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.

decision of the grievance officer denying his grievance was upheld. (ECF No. 2-1 at 5-6.) He also attached the final appeal decision from the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") dismissing his grievance at the final appeal level for not providing the required and/or legible documentation for proper review. (*Id*. at 7.)

Jacob brings claims for cruel and unusual punishment and excessive force. (*Id*. at 3.) He asserts that he suffered "extreme pain for being sprayed with O.C. spray" and claims he received the "medical attention that's mandated after the use of excessive force." (*Id*. at 5.) Jacob seeks money damages for relief. (*Id*.)

After being served with the Complaint, Gajewski filed a motion to dismiss the claims against him. (ECF No. 29.) Specifically, Gajewski filed a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the basis that Jacob failed to exhaust his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), in accordance with DC-ADM 804, the grievance policy of the Pennsylvania Department of Corrections ("DOC"). (*Id*. at 6-9.) Gajewski argues that Jacob failed to provide the Office with required and/or legible documentation for proper review in accordance with the grievance policy (*id.* at 7-8), and attached a copy of the packet that Jacob provided to SOIGA, labeled as Exhibit 2. (ECF No. 29-2.) In his response in opposition Jacob disputes that contention and argues that he did include the proper, legible documentation for his appeal and attached those copies he alleges he provided to the SIOGA. (ECF No. 35 at 3, 5-7.) The Court will address the parties' arguments in more detail below.

## II.    STANDARD OF REVIEW

"A [Rule]12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss

3

under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

To resolve a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro se* litigant states a claim, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

4

Dismissal of a complaint based on an affirmative defense, such as a failure to exhaust, is only appropriate at the pleading stage when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "[W]hile a court may entertain a motion to dismiss on [affirmative defenses], it may not allocate . . . [burdens] . . . in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (internal citation omitted). Rather, the burden of pleading and proving an affirmative defense is borne by the defendant. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).

### III. APPLICABLE LAW

The PLRA "mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Exhaustion is . . . a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, . . . it constitutes a threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi*, 904 F.3d at 265 (internal quotations omitted); *see also Perttu v. Richards*, 605 U.S. 460, 469 (2025) (Exhaustion is a non-jurisdictional "standard affirmative defense"). Accordingly, in cases governed by the PLRA, courts must address whether the prisoner-plaintiff has substantially complied with the prison's specific grievance procedures and determine whether those procedures were available to the inmate. *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *see also Prater v. Dep't of Corr.*, 76 F.4th 184, 203 (3d Cir. 2023)

5

(courts "determine whether a prisoner has properly exhausted a claim by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances" (internal quotations omitted)).  The Court is bound by the PLRA to apply the prison's available administrative exhaustion rules, however stringent.  *See* 42 U.S.C. 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007).  Claims that are not properly exhausted under the PLRA are procedurally defaulted.  *See, e.g., Woodford*, 548 U.S. at 92-93; *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004).

"[W]here a defendant moves to dismiss based on a failure-to-exhaust defense and the exhaustion issue turns on indisputably authentic documents related to the inmate's grievances, [a court] may consider those documents without converting a motion to dismiss to a motion for summary judgment."  *Rinaldi*, 904 F.3d at 261 n.1 (internal quotations and alterations omitted); *see also, e.g., Spruill*, 372 F.3d at 223 ("Given that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment."); *Brown*, 312 F.3d at 111 ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss."); *Walker v. Little*, No. 22-3451, 2023 WL 2570562, at *1 (3d Cir. Mar. 20, 2023) (affirming grant of motion to dismiss based on failure to exhaust administrative remedies).

The DOC's grievance policy, DC-ADM 804, sets forth a three-step process for review of inmate grievances.[4]  An inmate must initially submit a written grievance to the Facility Grievance Coordinator or his designee within fifteen working days after the event upon which the grievance is based.  DC-ADM 804, § 1.A(5), (8).  If the Facility Grievance Coordinator determines that the

---

[4] Gajewski appended a copy of DC-ADM 804 to his Motion, labeled as Exhibit 3.  (ECF No. 29-3.)  The policy is also available online at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (last visited Feb. 2, 2026).

grievance is properly submitted, a different staff member will be designated to serve as the Grievance Officer for that grievance. *Id.* § 1.C(3). The Grievance Officer will review the grievance, issue a decision on the Initial Review Response Form, and provide the decision to the Facility Grievance Coordinator who, in turn, will provide the decision to the inmate. *Id.* § 1.C(5).

If the grievance is rejected, the inmate has fifteen working days to appeal in writing to the Facility Manager. *Id.* § 2.A(1)(a). If the Facility Manager rejects the appeal, the inmate may appeal for Final Review with the SOIGA within fifteen working days of the denial of the Facility Manager's appeal. *Id.* § 2.B. Also, an inmate appealing a grievance to Final Review must provide the SOIGA with the following documents: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review response/rejection; (3) a legible copy of the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager's decision; and (5) a written appeal to the SOIGA. *Id.* § 2.B(1)(j)(1)-(5). If the inmate fails to provide any of the foregoing documentation, his or her Final Appeal may be dismissed. *Id.* § 2.B(1)(j)(6). The SOIGA will respond to the Final Appeal within thirty working days of receipt unless otherwise extended and/or referred. *Id.* § 2.B(2).

### IV. ANALYSIS

According to Gajewski's motion, Jacob's grievance appeal was rejected based on his failure to provide the SOIGA with required and/or legible documentation for proper review in accordance with the grievance policy. (ECF No. 28 at 7-8.) Accordingly, at issue here is whether Jacob has properly exhausted administrative remedies when he appealed his grievance to Final Review per the prison's procedures mandated by DC-ADM 804 that he must provide the SOIGA with the following documents: (1) a legible copy of the Initial Grievance; (2) a copy of the initial

7

review response/rejection; and (3) a legible copy of the Inmate Appeal to the Facility Manager.[5] *Id.* § 2.B(1)(j)(1)-(5).

Jacob alleges in his Complaint that he "completed all that was required to the highest level of the grievance process [and they] lied and said [he] didn't provide[] them with the correct paperwork." (Compl. at 7.) He claims he has "receipts that [he] sent them everything that was needed for [his] Final Appeal, so now [they] told [him] that [his] grievance has been dismissed at [his] final appeal level." (*Id.*) Jacob also attached to his Complaint both the initial review response from the grievance officer denying his grievance, and the appeal response from SCI Phoenix's Facility Manager, which reflects the decision of the grievance officer denying his grievance was upheld. (ECF No. 2-1 at 5-6.) In addition to the exhibits attached to the Complaint, the Court may also consider the grievance records that are attached to both Gajewski's motion, *see* ECF No. 29-2, and Jacob's Response, *see* ECF No. 35 at 5-7, without converting the motion to one for summary judgment. Neither party has claimed that the respective grievance records attached to their briefs are unauthentic or incomplete; rather the parties attached what appears to be documents related to the grievance packet with two exceptions. First, the writing in Jacob's initial grievance attached Gajewski's motion is lighter and harder to read, *see* ECF No. 29-2 at 3, compared to the copy attached to Jacob's Response, *see* ECF No. 35 at 5. The Court notes that Jacob appeared to write a note on his copy of the initial grievance that when the document is copied, "it comes out dark." *See id*. Although Gajewski's copy of the exhibit is harder to read, especially the first few lines, the Court is still able to make out the crux of Jacob's grievance related to allegedly being sprayed with O.C. spray "without warning" by Gajewski. (ECF No. 29-2 at 3.) Regardless, Jacob attached a version of what appears to be a copy of the same document Gajewski attached that contains

---

[5]  Gajewski does not contend that Jacob failed to file a copy of the Facility Manager's decision and a written appeal to the SOIGA. (*See* ECF No. 29-2 at 4-5.)

darker writing and is completely legible to the Court. (*See* ECF No. 35 at 5.) The second exception is that in Jacob's grievance packet attached to Gajewski's motion, there is not a copy of the initial review response/rejection or his appeal to the Facility Manager, *see* ECF No. 29-2, but there are copies attached to Jacob's Response, *see* ECF No. 35 at 6-7. Gajewski had an opportunity to file a reply brief by November 8, 2025, *see* ECF No. 32, to dispute the authenticity or completeness of the documents Jacob attached to his Response, and to date, he has not filed one. The Court also notes that Gajewski did not address that Jacob attached to his Complaint both the initial review response from the grievance officer denying his grievance, and the appeal response from SCI Phoenix's Facility Manager, which Jacob alleges was sent to the facility and "they," presumably the prison staff, "lied" about receiving through the grievance process. (ECF No. 2-1 at 5-6; *see also* Compl. at 7.) After reviewing the grievance records submitted by the parties in this case, which have not been disputed to be unauthentic or incomplete,[6] the Court concludes Gajewski has failed to meet his burden to prove Jacob's failure to exhaust. *See Jones,* 549 U.S. at 216 (failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs).

---

[6] The Court recognizes the parties disagree about the completeness of the grievance packet and if the grievance documents were ultimately submitted in the final packet, which is a factual dispute premature for resolution at this stage of the proceedings, but neither party disputes the authentic or completeness about the individual documents discussed herein. The Court declines the invitation to convert the motion to summary judgment prematurely. *See Ortiz v. Hayman*, No. 06-4730, 2008 WL 1319203, at *4 (D.N.J. Apr. 10, 2008) ("Here, there is a dispute of fact as whether Plaintiff actually filed an [Inmate Remedy Form] on May 23, 2005 making summary judgment at this juncture inappropriate. The State may renew its motion when discovery is complete.").

## V. CONCLUSION

For the reasons set forth, the Court concludes that Gajewski has not met his burden to demonstrate that Plaintiff failed to exhaust his available administrative remedies. Therefore, Gajewski's motion to dismiss is denied. Further, the alternative motion for summary judgement is denied, as premature.

An appropriate Order, which directs Gajewski to file an answer to the Complaint, will be entered separately.

*NITZA I. QUIÑONES ALEJANDRO, J*